IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DORIS M. SOLSOL and YOLI SANDRA RODRIGUEZ DIAZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCRUB, INC. and TERESA KAMINSKA,<br><br>Defendants. | No. 13 CV 7652<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Doris Solsol and Yoli Rodriguez Diaz, individually and on behalf of all others similarly situated, have brought a putative collective action complaint against defendants Scrub, Inc. ("Scrub") and Teresa Kaminska, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Plaintiffs move for conditional class certification pursuant to 29 U.S.C. § 216(b) and issuance of a notice of the collective action to potential class members. For the reasons stated below, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

Scrub is a company that provides janitorial services in the Chicago area. Defendant Kaminska was formerly the Owner and President of Scrub, but now serves as the company's Vice President of Operations. The overwhelming majority of Scrub employees work at O'Hare International Airport ("O'Hare"). Since at least October 2010, Scrub employees working at O'Hare provided an array of janitorial services under one of three types of contracts the company had at the airport. Until December 2012, approximately 422 Scrub janitors, including the named plaintiffs, worked under Scrub's contract with the City of Chicago to clean public walkways and

bathrooms at O'Hare.[1]  During the relevant time period, Scrub also contracted with commercial airlines and other private companies to provide janitorial services for O'Hare's gate, concourse, ticketing, and office areas.  Finally, Scrub had separate contracts with airlines to clean airplane cabins.  Another 145 Scrub janitors worked at non-airport locations.

Scrub janitors working at O'Hare clock in and out at the start and end of their shifts.  At non-airport locations, Scrub janitors orally report the amount of time worked to supervisors.  Regardless of which way Scrub employees report their time, supervisors fill out Supervisor Payroll Input Sheets ("input sheets") to record the time each janitor worked on a given day.  Sarah Coady, Scrub's Payroll Specialist, uses these input sheets, not the time cards or oral representations, to tabulate Scrub's employee payroll.

Plaintiffs claim that their compensation, as determined by the input sheets, violates the FLSA for several reasons.  First, plaintiffs allege that defendant Kaminska trained Scrub supervisors to report on the input sheets scheduled hours only "for the days that [employees] are there and that they are not late and don't leave early."  According to plaintiffs, this practice means that a janitor who starts work early and leaves on time or starts work on time and works late is not compensated for the additional time she worked.  Second, plaintiffs allege that supervisors are taught to round a janitor's time to the nearest 15 minutes when she arrives late or leaves early.  For example, a janitor who arrives 5 minutes late may be docked 15 minutes and, thus, is uncompensated for 10 minutes of work.  Third, plaintiffs allege that 30 minutes are automatically deducted from each janitor's scheduled shift to account for a meal break, even if the janitor is ordered to return to work during the break.

Plaintiffs seek to conditionally certify a class pursuant to 29 U.S.C. § 216(b), defined as: "All hourly non-exempt employees of Defendants (or their subsidiaries, affiliates, predecessors

---

[1] Defendants do not contest conditional certification of a class of these 422 employees.

and/or successors), employed between October 24, 2010 through to the present, whose payroll was calculated from supervisor payroll input sheets and who were not paid for all time worked." At the time plaintiffs filed the instant motion, 276 Scrub janitors had opted into the putative collective action, representing approximately 9 percent of Scrub's more than 3,500 hourly janitorial employees.

## DISCUSSION

**A.     Legal Standard**

Section 216(b) of the FLSA permits plaintiffs to bring a collective action against an employer for unpaid minimum wages or overtime compensation on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b). A collective action under section 216(b) differs from a class action under Fed. R. Civ. P. 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under section 216(b) only if they opt into the action by providing their written consent. Woods v. New York Life Ins. Co., 686 F.2d 578, 579-80 (7th Cir. 1982).

Courts in this district employ a two-step process for determining whether an FLSA lawsuit should proceed as a collective action. Dailey v. Groupon, Inc., No. 11-C-5685, 2014 WL 4379232, at *3 (N.D. Ill. Aug. 27, 2014). The first step requires the named plaintiff to establish that the potential class members are similarly situated by making a modest factual showing that they were victims of a common policy or plan to violate the law. Id. "[T]he similarly situated standard is a liberal one . . . [that] typically results in conditional certification of a representative class." Rottman v. Old Second Bancorp, Inc., 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (internal quotations omitted). Similarly, the modest factual showing standard is lenient and demands only some factual support. Johnson v. Pinstripes, Inc., No. 12-C-1018, 2013 WL 5408657, at *2

3

(N.D. Ill. Sept. 26, 2013). In applying these standards, "the court does not consider the merits of a plaintiff's claims, or witness credibility." Nehmelman v. Penn Nat. Gaming, Inc., 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011).

At the second step, which takes place following discovery, the analysis is more rigid and requires the court to consider: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." Dailey, 2014 WL 4379232, at *3. "At that time, a defendant may move to decertify the case or divide the class into subclasses." Johnson, 2013 WL 5408657, at *3 (internal quotations omitted).

**B.     Analysis**

At this stage of the proceedings, the court must determine whether the named plaintiffs have made a "modest factual showing" sufficient to demonstrate that the proposed class members were potentially victims of a common policy or plan that violated the FLSA. Gambo v. Lucent Technologies, Inc., No. 05-C-3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005). As discussed above, defendants do not contest conditional certification of all Scrub janitors who worked at O'Hare under the company's contract with the city. Defendants, however, do contest including as a part of the collective action Scrub janitors who worked outside of O'Hare (approximately 145 employees) and janitors who worked at O'Hare under private contracts (approximately 3,500 employees). In opposition to conditional certification of this broad class, defendants argue that plaintiffs have failed to present evidence to support a showing that a common policy or plan existed in regard to these two groups of prospective plaintiffs. Specifically, defendants contend that plaintiffs have not presented any evidence concerning

Scrub janitors who worked at non-airport locations and have presented limited evidence concerning O'Hare janitors who did not work under the city contract.

As discussed above, plaintiffs claim that defendants violated that FLSA in three ways. First, plaintiffs contend that defendants violated the FLSA by paying janitors only for the time they were scheduled to work, even when a janitor began work before or worked after her scheduled shift time. Plaintiffs have submitted a substantial amount of evidence in support of this allegation, including testimony from defendants' witnesses, employee time cards and input sheets, and declarations from opt-in plaintiffs. Most significantly, a multitude of employee punch cards show that many Scrub janitors worked more hours than the scheduled 8 hours supervisors reported on their input sheets.[2] Because janitor pay is determined by the input sheets and not the employee punch cards, it appears that janitors were frequently underpaid. These punch cards and input sheets, without more, provide more than a sufficient showing that a practice of violating the FLSA was in place. See Campbell v. Advantage Sales & Mktg., LLC, No. 09-CV-1430, 2010 WL 3326752, at *4 (S.D. Ind. Aug. 24, 2010) (explaining that an employer may be liable for an FLSA violation occurring as the result of a common practice); see also Russell v. Illinois Bell Tel. Co., No. 08-C-1871, 2010 WL 2595234, at *9 (N.D. Ill. June 28, 2010).

In addition to this physical evidence, plaintiffs also argue that defendant Kaminska's testimony and declarations from various opt-in plaintiffs support their claim of a common policy or plan to pay janitors only for their scheduled shift time. For example, one opt-in plaintiff stated in her declaration that she was trained to report scheduled shifts on input sheets even when

---

[2] Defendants incorrectly contend that plaintiffs identified only a single janitor who worked at O'Hare under a private contract whose punch cards and input sheets did not match. While plaintiffs pointed to only one such employee in their motion, the attached exhibits provide numerous examples of Scrub janitors working under private contracts at O'Hare who were underpaid based on when they punched in and out.

5

employees began work early or finished work late. Similarly, defendant Kaminska testified, although somewhat inconsistently, that she trained supervisors to mark only scheduled hours "for the days that [employees] are there and that they are not late and don't leave early" and that Scrub paid janitors "from the time when [their] shift starts."

Defendants' contentions that employees were not required to come to work early is irrelevant for purposes of the FLSA. The FLSA obligates employers to pay employees for work "even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." Kellar v. Summit Seating Inc., 664 F.3d 169, 177 (7th Cir. 2011). Nonetheless, plaintiffs have submitted some evidence that janitors were in fact required to arrive before their scheduled shift time. For example, two opt-in plaintiffs who had supervisory roles in addition to their janitorial work submitted declarations that they were trained to require janitors to arrive at least 15 minutes prior to the start of their scheduled shifts to collect and prepare supplies and equipment.

Contrary to defendants' contentions, the evidence thus far also indicates that when janitors arrived early they performed compensable tasks, such as collecting supplies, completing mandatory stretches, and performing other activities that were essential to their work. Similarly, defendants' argument that supervisors did not know janitors were beginning work early is not supported by the evidence or defendants' own position. If, as defendants contend, supervisors were calculating employee hours for the input sheets based on when the employee punched in and out, and not solely on the employee's scheduled shift time, supervisors should have been aware that employees were working more than their scheduled hours.

Defendants contend that plaintiffs' evidence fails to establish a common unlawful policy or plan, because "multiple Scrub witnesses have testified that there is . . . no company policy to

round janitor time entries to the scheduled hours, and that individual supervisors devise their own rounding practices, if any." Plaintiffs, however, have presented evidence from multiple Scrub employees with different levels of responsibility who all stated that supervisors were trained to engage in the alleged practice. While the implementation of this alleged policy may vary from supervisor to supervisor, the evidence plaintiffs offer concerning common training is sufficient at this stage to show a common policy. "[A] formal policy is not required, and indeed, even where a formal policy is compliant with the FLSA on its face, an employer may still be liable for FLSA violations occurring in common practice." Campbell, 2010 WL 3326752 at *4. Plaintiffs have clearly presented more than a modest showing of common practices. Moreover, while there may be conflicting evidence on this issue, weighing the evidence is not appropriate at this stage of the litigation, see, e.g., Nehmelman, 822 F. Supp. 2d at 751, and, as discussed above, plaintiffs have offered at least some evidence that such a policy did in fact exist, which is all that conditional class certification requires.

Second, plaintiffs allege that defendants violated the FLSA by rounding janitor time to the nearest 15 minutes when janitors arrived late to work. In support of this allegation, plaintiffs point to Scrub's General Manager's testimony that "all hourly janitorial employees of Scrub are subject to have their actual hours recorded on their time cards to be rounded in some way." Plaintiffs' allegation is further supported by an opt-in plaintiff's description of how she was trained to deduct 15 minutes when a janitor was 5 or more minutes late and how she observed others imposing the same deductions.

Finally, plaintiffs allege that defendants deducted 30 minutes from the time janitors worked each day to account for meal breaks. Defendants allegedly did so even though janitors were routinely interrupted during breaks and ordered to work. According to plaintiffs, janitors

who were responsible for cleaning airplane cabins were always on call and, according to one, "[could] not refuse to clean a plane during our meal break." Contrary to defendants' arguments, an individualized inquiry into "whether an individual has a claim for work performed during the meal period" is not required at this time. See, e.g., Brand v. Comcast Corp., No. 12-CV-1122, 2012 WL 4482124, at *6 (N.D. Ill. Sept. 26, 2012) ("That plaintiff's FLSA claims may later require a more individualized inquiry does not preclude authorizing notice of their claims at this first stage.").

As outlined above, plaintiffs have presented sufficient evidence to make the modest factual showing of a common policy or plan to violate the FLSA in regard to employees who worked at O'Hare. Consequently, conditional class certification is appropriate as to all Scrub janitors who worked at O'Hare. Plaintiffs, however, have not presented any evidence concerning the 145 Scrub employees who worked at non-airport locations, and therefore have failed to make any showing that the named plaintiffs are similarly situated to those individuals. As such, conditional class certification is not appropriate in regard to Scrub janitors who did not work at O'Hare.

In addition to disputing the scope of the putative class, the parties also disagree on the logistics of issuing notice and the wording of that notice. Defendants object to plaintiffs' proposed class definition including reference to Scrub subsidiaries, affiliates, predecessors, and/or successors. Defendants also contend that the proper notice period is three years from the date of the certification order, not three years prior to the date plaintiffs filed their complaint. Finally, defendants oppose any form of notice other than by mail and seek to limit the opt-in period to 60 days.

The parties are directed to meet and confer concerning a mutually agreeable notice. The court, however, issues the following guidelines regarding the parties' disputes. The court rejects including reference to Scrub subsidiaries, affiliates, predecessors, and or/successors, because plaintiffs have not identified any such entities nor have they provided any persuasive evidence that such entities are at issue in this lawsuit. Should discovery reveal any such entities, plaintiffs may seek appropriate relief. Additionally, because plaintiffs have alleged a willful violation of the FLSA, the class period shall begin on October 24, 2010, three years prior to plaintiffs filing suit. See 29 U.S.C. § 255(a) (setting a three-year limitations period for willful violations); See also, Babych v. Psychiatric Solutions, Inc., No. 09-C-8000, 2011 WL 5507374, at *8 (N.D. Ill. Nov. 9, 2011) ("the relevant time-period is the three years prior to the filing of [plaintiff's] complaint"); Lukas v. Advocate Health Care Network and Subsidiaries, No. 14-C-2740, 2014 WL 4783028 (N.D. Ill. Sept. 24, 2014). Given that plaintiffs do not appear to take issue with including a disclaimer concerning the court's position on the case, one shall be included in the notice. Additionally, notice shall be provided in English, Spanish, and Polish.

In regard to the logistics of distributing notice, the court requires defendants to turn over only the names and addresses of potential class members, and if notices are returned undelivered, individual phone numbers and email addresses shall be provided, as needed, subject to production under a protective order limiting the use of that information. In addition to mailing out notices, plaintiffs are also permitted to have notices posted at all Scrub offices at O'Hare. Including notices with employee paychecks is not necessary at this time. Defendants' suggested disclaimer concerning non-retaliation seems sufficient to quell any concerns potential class members may have about joining the collective action. Finally, in light of the large number of

potential class members, the court concludes that a 75-day period is a reasonable amount of time to give potential plaintiffs to join the lawsuit.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for conditional class certification and issuance of a notice of the collective action is granted in part and denied in part. The court conditionally certifies a class consisting of all individuals who were and/or are currently employed by Scrub as hourly non-exempt employees at O'Hare International Airport between October 24, 2010, through to the present, whose payroll was calculated from supervisor payroll input sheets and who were not paid for all time worked. Plaintiffs' motion is denied to the extent that plaintiffs requested conditional certification of a class that included Scrub janitors who work or worked at non-O'Hare locations. The parties are ordered to meet and confer regarding a mutually agreeable notice that is to be submitted to the court on or before June 2, 2015. This matter is set for status on June 9, 2015.

**ENTER:** April 27, 2015

_____
**Robert W. Gettleman
United States District Judge**