**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DORIS M. SOLSOL and YOLI SANDRA RODRIGUEZ DIAZ, Individually and on Behalf of All Others Similarly Situated, | ) | No. 13 C 7652 |
| Plaintiffs, | ) | Judge Gettleman |
| v. | ) | Magistrate Judge Gilbert |
| SCRUB, INC., TERESA KAMINSKA, and MARK RATHKE, | ) | |
| Defendants. | ) | |

**INDIVIDUAL DEFENDANTS', TERESA KAMINSKA AND MARK RATHKE, MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON INDIVIDUAL LIABILITY**

Defendants, Teresa Kaminska ("Kaminska"), and Mark Rathke ("Rathke"), by and through their undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, move for summary judgment on individual liability under the Fair Labor Standards Act ("FLSA"), and in support hereof, state as follows:

## I. INTRODUCTION

Plaintiffs, Doris Solsol ("Solsol") and Yoli Sandra Rodriguez Diaz ("Rodriguez") (collectively "Plaintiffs"), are former employees of Defendant, Scrub, Inc. ("Scrub"), who worked as janitors at Chicago' O'Hare International Airport ("O'Hare"). Plaintiffs' claim that they allegedly were not paid for certain time before the beginning of their shifts when they punched in early, and for time allegedly worked during their thirty-minute unpaid meal periods. They seek payment for this time under the Fair Labor Standards Act ("FLSA").

Plaintiffs originally filed this action as an FLSA collective action. On May 25, 2017, the Court entered an Order decertifying the FLSA class (Doc. No. 564). On July 10, 2017, the Court

dismissed all those who signed opt-in consent forms without prejudice (Doc. No. 574). The claims of Solsol and Rodriguez remain.

There is no genuine issue of material fact that the remaining claims against the individual Defendants, Kaminska and Rathke, are not proper under the FLSA. Neither Kaminska nor Rathke exercised any supervisory authority over Solsol or Rodriguez and neither of them were responsible for the violations alleged by Solsol or Rodriguez. There is no genuine fact issue that out of the approximately 800 Scrub janitors at O'Hare, neither Kaminska nor Rathke were aware of the violations alleged by Solsol and Rodriguez. As a result, Kaminska and Rathke are not "employers" of Solsol and Rodriguez under the FLSA. Judgment as a matter of law should be entered in favor of Kaminska and Rathke and against Plaintiffs on all remaining claims.

## II. FACTUAL SUMMARY

### A. Solsol & Rodriquez's Work as Janitors and Scrub's Timekeeping and Payroll Practices.

Between October 2010 and December 31, 2012, Scrub provided cleaning services to the main quarters of the domestic terminals at O'Hare and the public restrooms under a contract with the City of Chicago (hereinafter "the City contract"). (Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("SOF") ¶ 1.) The City contract ended on December 31, 2012 and was not renewed by the City. (*Id.*)

Solsol and Rodriguez were employed by Scrub as janitors working on the City contract. (SOF ¶¶ 2-3.) They would be assigned to clean bathrooms and/or floors in certain of the airport terminals. (*Id.* ¶ 5.) Solsol and Rodriguez were employed by Scrub until December 2012 when Scrub's contract with the City of Chicago ended. (*Id.* ¶¶ 6-7.)

Solsol's scheduled shift was from 6:00 a.m. until 2:30 p.m. (SOF ¶ 15.) Rodriguez worked on the second shift, which was scheduled from 2:00 p.m. until 10:30 p.m., five days per

week. (*Id*. ¶ 16.) Scrub's janitors, including Solsol and Rodriguez, used time clocks in their designated reporting offices to punch-in and punch out for a designated shift. (*Id.* ¶ 11.) Terminal 1, Terminal 2, Terminal 3 and Terminal 5 at O'Hare contained offices used by Scrub, each staffed with supervisors of janitors for first, second and third shifts. (*Id.* ¶ 12.) Scrub has approximately 42 supervisors at O'Hare. (*Id.* ¶ 13.) There are approximately 800 janitors employed by Scrub at O'Hare. (*Id.* ¶ 14.)

Some janitors would punch-in on the time clock early prior to the start of their shift and then spend time before the shift socializing or playing games on their phones. (SOF ¶ 18.) Scrub has a thirty (30) minute overlap between shifts with one shift ending thirty (30) minutes after a new shift begins, which decreases the need for janitors to work overtime. (*Id.* ¶ 17.)

Hourly employees of Scrub at O'Hare, including Solsol and Rodriguez, were entitled to a 30 minute unpaid meal period per shift. (SOF ¶ 19.) Janitors would not punch in or out for their meal breaks and there are no records kept to track the time of day a meal break is taken. (*Id.* ¶ 21.) Solsol stated that she did not know who created the meal period schedule. (*Id.* ¶ 20.)

Supervisors reported janitors' time worked to Scrub's payroll department using a document called a "supervisor payroll input sheet". (SOF ¶ 23.) The supervisors on each shift are in charge of submitting the weekly supervisor payroll input sheets to Scrub's payroll department. (*Id.* ¶ 24.) The only person with the power to change a supervisor payroll input sheet is the supervisor who worked the particular shift with the crew. (*Id.* ¶ 25.) The supervisor payroll input sheets were delivered from O'Hare airport on a weekly basis to Scrub's payroll coordinator, Sarah Coady ("Coady"), to process for payroll. (*Id.* ¶ 27.) Although Coady received the punch cards of the hourly employees for a particular pay period, she generally

referred to the supervisor payroll input sheets when entering the payroll information into the Paylocity pay system used by Scrub. (*Id.* ¶ 28.)

Plaintiffs claim that they punched in prior to the start of their scheduled shifts, but were not paid prior to the start of the shift, and that they worked through unpaid meal periods and were not paid for the work. (Amended Complaint, Doc. No. 435.) Rodriguez never complained to Scrub about not being paid for all time worked. (SOF ¶ 29.)

**B. Facts relating to Teresa Kaminska.**

Kaminska serves as Vice President of Operations, but has not been an owner of Scrub. (SOF ¶ 30 .) Kaminska does not hire people. (*Id.* ¶ 33.) Kaminska testified that she trained some supervisors, but not all supervisors. (*Id.* ¶ 32.)

As to timekeeping, Kaminska stated that supervisors "have to make - - they have to put the hours - - how many hours exactly the employee was working." (SOF ¶ 38.) Kaminska testified that "I told them they have to put the hours - - how many they worked - - how many hours they worked." (*Id.* ¶ 39.) Kaminska did not check any janitor punch cards. (*Id.* ¶ 34.) It was not Kaminska's job to check janitor punch cards. (*Id.*)

Kaminska did not check supervisor payroll input sheets and has never checked them. (SOF ¶ 35.) Kaminska testified that supervisors are in charge of payroll, supervisors know "exactly what is going on, not me." (*Id.* ¶ 36.). Supervisors who work a particular shift are responsible for payroll for that shift. (*Id.* ¶ 37.)

Nobody ever mentioned to Kaminska that janitors were told to come to work early before the start of the shift to gather supplies and equipment. (SOF ¶ 40.) Solsol stated that Kaminska never talked to her about collecting equipment prior to the start of her shift. (*Id.* ¶ 41.) Rodriguez stated that Kaminska told her supervisor that the janitors were required to report to

work no later than 1:30 p.m., but Kaminska never directly told this to Rodriguez. (*Id.* ¶ 43.) Rodriguez has no first hand personal knowledge regarding Kaminska's timekeeping or scheduling instructions to any supervisors. (*Id.*) Plaintiffs have presented no evidence that Kaminska supervised or monitored the manner in which supervisors handled employee punch in and preparation time or meal breaks.

**C. Facts involving Mark Rathke**.

Defendant, Mark Rathke ("Rathke"), is employed as Scrub's General Manager ("GM"). (SOF ¶ 44.) Rathke reports directly to the CEO of Scrub, and the Vice President of Finance and the Director of Sales report directly to Rathke. (*Id.* ¶ 47.). The "human resource specialist", Victoria Misa, reports to Rathke. (*Id.* ¶ 48.)

Rathke interviews and is involved in the hiring process for supervisors, but he does not hire any janitors: "I don't hire any janitors or cabin-cleaning people, but I do get involved in hiring the supervisors." (SOF 49.) He does the initial interviews before the supervisors are sent to anybody else to interview. ( *Id.*) Rathke would only be involved with disciplinary actions against janitors when they raised to the level of suspension or more. (*Id.* ¶ 50.)

Rathke stated that janitors are not required to do anything prior to the start of their shift. (SOF ¶ 51.) If they did anything prior to the start of the shift, Rathke stated, "we wouldn't be aware of it." (*Id.* ¶ 52.) Rathke's knowledge as to employees' punching in was expressed by him as follows:

> How can I explain this? The employees have a start time. We don't require them to do anything prior to their start time. They may come in and punch right at their start time, or they may be -- many of them come in – they're in early. They don't want to stand in line. There's a lot of reasons that they don't go up and -- that they punch early. We don't prevent them from punching early. We know if they are.

(*Id.* ¶ 53.) Any overtime would be determined by the supervisor of a particular shift. (*Id.* ¶ 26.) The supervisor had the authority to approve or deny overtime. (*Id.*)

There was no evidence elicited by Plaintiffs that Rathke set the arrival or punch-in schedules of the Plaintiffs or that he monitored employees' meal breaks.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). To defeat a summary judgment motion, "the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir.2004). Thus, to succeed, the nonmovant "must do more than raise some metaphysical doubt as to the material facts; [he] must come forward with specific facts showing that there is a genuine issue for trial." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir.2010) (citation omitted).

## IV. ARGUMENT

### A. Kaminska and Rathke Were Not the Supervisors of Solsol or Rodriguez and They Were Not Responsible For the Violations Alleged by Plaintiffs.

Section 203(d) of the FLSA defines and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee. " 29 U.S.C. §203(d). "Rather than relying on formalistic labels or common law concepts of agency, courts assess the "economic reality" of the working relationship to determine whether an individual is an employer under the FLSA." *Cardenas v. Grozdic*, 67 F.Supp.3d 917, 923 (N.D. Ill. 2014) (citations omitted). Some courts consider the certain factors in assessing economic reality,

including whether the defendant (1) possessed the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id. citing Velez v. Sanchez*, 693 F.3d 308, 326 (2nd Cir. 2012). *See also Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). However, "the Seventh Circuit can be read as having rejected rigid application of the four-factor version of the economic realities test . . .." *Schneider v. Cornerstone Pints, Inc.,* 148 F.Supp.3d 690, 697 (N.D. Ill. 2015) *citing Moldenhauer v. Tzewell-Pekin Consolidated Comms. Ctr.,* 536 F.3d 640, 644 (7th Cir. 2008) ("[W]e decline to ... limit our review [to these four factors] in this case or subsequent cases. Although these factors are certainly relevant in deciding whether an employer-employee relationship exists, it would be foolhardy to suggest that these are the only relevant factors, or even the most important.").

The Seventh Circuit has further held that an individual defendant may be deemed an "employer" under the FLSA "provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir. 1987) (emphasis added). *See also Wilson v. Advocate Health and Hosp. Corp.,* 2006 WL 1749662, at *2 (N.D. Ill., June 21, 2006) ("The FLSA states that an individual employee can be considered the employer referenced in the statute only if: (1) he had supervisory authority over the plaintiff; and (2) he was at least partly responsible for the alleged violation."). "[U]nexercised authority is insufficient to establish liability as an employer." *Cardenas*, 67 F.Supp.3d at 923 *citing Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1161 (11th Cir. 2008).

In the present case, none of the undisputed facts support Plaintiffs' contention that Kaminska and Rathke are "employers" who could be individually liable under the FLSA. There

is no genuine issue of material fact that neither Kaminski nor Rathke exercised any supervisory authority over Solsol or Rodriguez and that neither of them were responsible for the violations alleged by Solsol or Rodriguez. As such, judgment as a matter of law should be entered in favor of Kaminska and Rathke on all claims asserted by Plaintiffs.

**1. Rathke and Kaminska Did Not Exercise Any Supervisory Authority over Solsol or Rodriguez.**

An individual defendant may be deemed an "employer" under the FLSA "provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir. 1987). Indeed, the Seventh Circuit has interpreted the FLSA's definition of employer to include "the supervisor who uses his authority over the employees whom he supervises to violate their rights." *Luder v. Endicott,* 253 F.3d 1020, 1022 (7th Cir. 2001).

Kaminska and Rathke had general responsibilities within Scrub, but there are no facts showing that they exercised these responsibilities over Solsol and Rodriguez. Kaminska and Rathke were not involved with janitors punching in on the time clock each shift. They were not involved with their meal periods, when they took a meal period, or how long they were given on any particular day for a meal period. Kaminska and Rathke had no involvement with the actual supervisors' preparation of the weekly payroll sheets, or the preparation of weekly payroll by Coady. (SOF ¶¶ 22-27, 34-38, 52-54.) There is no evidence that either Rathke or Kaminska hired Solsol or Rodriguez. Rather, the supervisors of the particular shift oversaw the time clocks, reviewed the punch cards, assigned meal periods and completed the weekly supervisor payroll input sheets.

Even if Kaminska and Rathke were higher level management employees who may have had the authority to be involved in these tasks, there is no evidence that they were, in fact,

involved with any of these tasks. As the Court noted in *Alvarez Perez* case, "unexercised authority is insufficient to establish liability as an employer." 67 F.Supp. 3d 917, 923. "If a defendant does not exercise any authority, it cannot be that he is responsible for the violation." *Schneider v. Cornerstone Pints, Inc.*, 148 F.Supp.3d at 698.

There is no genuine fact issue that Kaminska and Rathke did not exercise supervisory authority over Solsol and Rodriguez. As such, they are not "employers" under the FLSA. Judgment as a matter of law should be entered in favor of Kaminska and Rathke.

**2. Rathke and Kaminska Were Not Responsible for the Violations Alleged by Solsol and Rodriguez.**

To be deemed an "employer", in addition to having supervisory authority, an individual defendant must be "responsible in whole or part for the alleged violation." *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir. 1987). It not sufficient for the defendant to have exercised "some arbitrary authority (e.g., sign a few checks). <u>The authority must be related to the violation</u>." *Schneider,* 148 F.Supp.3d at 698 (emphasis added).

The concept that individual liability as an "employer" under the FLSA necessarily involves some control over the particular violation alleged is also supported by *Cardenas v. Grozdic*, 67 F.Supp.3d 917 (N.D. Ill. 2014) where Judge Kendall held that the company owner was not the worker's employer under the FLSA. *Id.* at 923. The defendant owner in *Cardenas* did not hire the plaintiff, was never his supervisor, never told him what to do or where to go. Nor did he set the employee's hours, his hourly wage, or his work schedule. *Id.* at 923. Based on all this, the Court concluded that there was no factual evidence that individual defendant-owner exercised control over the plaintiff or was responsible for the alleged FLSA violations. *Id.* at 924. Similarly, there is no evidence that Kaminska and Rathke knew about the early punch-ins of Solsol and Rodriguez or directed that they punch-in and begin work early, that they

knew about their meal periods, or that they were personally involved in the actions controlled by their individual supervisors. Rodriguez's hearsay statements regarding what her supervisor allegedly told her regarding punching-in early do not create any genuine fact issues about Kaminska or Rathke. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996) (holding that self-serving conclusory assertions are not sufficient to defeat summary judgment and noting "conclusory statements in [the plaintiff's] affidavit [or deposition] do not create an issue of fact.") (citations omitted).

There is no genuine issue of material fact that the conduct of Kaminska or Rathke did not cause, in whole or in part, the violations alleged by Solsol and Rodriguez. *See Wilson*, 2006 WL 1749662, at *2 (holding that individual defendant was not an "employer" under the FMLA noting that "even if McCarthy's inherent duties enabled him to give Wilson direction from time to time, there is no allegation that, over a year after his involvement with her, McCarthy had any part or authority in the decision . . ..").

**3. There is No Genuine Fact Issue That Kaminska and Rathke Were Not Aware of the Alleged Violations.**

In addition, there is no genuine fact issue about the awareness by Kaminska or Rathke of the violations alleged by Solsol and Rodriguez. Indeed, it would be incredible for Kaminska or Rathke to be expected to be aware of the daily work of each one of the approximately 800 janitors employed by Scrub at O'Hare (SOF ¶ 14), which includes an area that spans 4.8 million square feet (Memorandum Opinion and Order at p. 6, n. 5, Doc. No. 564).

Regarding janitors punching-in, Rathke testified: "The employees have a start time. We don't require them to do anything prior to their start time." (SOF ¶ 53.) As Rathke also stated, if the employees did something prior to the shift "we wouldn't be aware of it." (*Id.* ¶ 52.) Kaminska stated what she told supervisors about keeping janitor time: "I told them they have to

put the hours - - how many they worked - - how many hours they worked." (*Id.* ¶ 39.) Kaminska and Rathke's unawareness of the events immediately after Solsol and Rodriguez punched in for a shift and during their meal periods must be taken into consideration.

The Seventh Circuit's ruling in *Kellar v. Summit Seating, Inc.*, 664 F.3d 169 (7th Cir. 2011), is instructive. The individual plaintiff in *Kellar* claimed that she regularly arrived at defendant's factory 15 to 45 minutes before the start of her shift. Before her shift she would do miscellaneous tasks such as make coffee, review work schedules and distribute fabric required in the manufacture of the company's products. She also drank coffee and smoked a cigarette. *Id.* at 172. Plaintiff never told her supervisors that she was working prior to her shift. Applying the Portal-to-Portal Act, the district court found that the plaintiff had to show that the company either knew or should have known that she was working overtime. *Id.* at 177. Because the defendant did not know that plaintiff was engaged in the pre-shift activities the district court granted the defendant summary judgment on the FLSA overtime claim. *Id.* at 178.

The *Kellar* standards should be applied here, where more compelling circumstances exist. In order for the Court to hold Kaminska or Rathke individually liable as "employers" they had to know about the actions that are now asserted by Solsol and Rodrgiuez. There are no facts raised by Plaintiffs that this was the case. Indeed, similar to the plaintiffs in *Kellar*, some janitors in this case have testified that they would punch-in early and then relax or socialize before the start of the shift. (SOF ¶ 18.) Absent some requirement of knowledge on the part of Kaminska or Rathke, the imposition of individual liability on them merely by virtue of their positions within the company imposes a staggering burden to hold them liable for the FLSA violations alleged by Solsol and Rodriguez. Authority on the part of the individual defendant must be coupled with awareness. The lack of any such awareness further supports denial of any determination that

Kaminska or Rathke are "employers" under the FLSA. Accordingly, judgment as a matter of law should be entered for Kaminska and Rathke on all claims.

## III. CONCLUSION

The undisputed material facts demonstrate that Kaminska and Rathke did not exercise supervisory authority over Solsol and Rodriguez, that they were not responsible in whole or in part for the violations alleged by Solsol and Rodriguez, and that they were not aware of the alleged violations. Accordingly, the Court should enter a finding that Kaminska and Rathke are not employers under the FLSA and grant summary judgment in favor of Kaminska and Rathke on all claims brought against them.

WHEREFORE, Defendants Teresa Kaminska and Mark Rathke request that the Court grant their Motion for Partial Summary Judgment on the issue of individual liability as "employers" under the FLSA, and enter judgment in their favor on all Counts of the Complaint, and grant such other relief as the Court deems just and equitable.

Dated: October 31, 2017

Respectfully submitted,

Teresa Kaminska and
Mark Rathke

By: /s/ Ryan A. Haas
One of Their Attorneys

Francisco Connell (6289256)
David J. Tecson (6198108)
Ryan A. Haas (6283020)
Daniel J. Fumagalli (6182648)
CHUHAK & TECSON, P.C.
30 South Wacker, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 444-9300
Facsimile: (312) 444-9027