IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DORIS M. SOLSOL and YOLI SANDRA RODRIGUEZ DIAZ, ) ) ) ) Plaintiffs, ) ) v. ) ) SCRUB, INC., TERESA KAMINSKA, ) and MARK RATHKE, ) ) Defendants. ) | No. 13 CV 7652 Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Doris Solsol and Yoli Rodriguez Diaz brought a putative collective action complaint against defendants Scrub, Inc. ("Scrub"), Teresa Kaminska, and Mark Rathke alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. This court conditionally certified a class of Scrub employees pursuant to 29 U.S.C. § 216(b) on April 27, 2015. Then, after substantial discovery, the court granted defendants' motion to decertify the class on May 23, 2017. Defendants Kaminska and Rathke now move for summary judgment as to their individual liability. For the reasons stated below, Kaminska and Rathke's motion is granted.

**BACKGROUND[1]**

Scrub is a company that provides janitorial services in the Chicago area. Defendant Kaminska is Scrub's Vice President of Operations and defendant Rathke is Scrub's General Manager. Plaintiffs worked for Scrub as janitors at O'Hare International Airport ("O'Hare")

---

[1] The facts discussed throughout this opinion are, unless otherwise specified, undisputed and taken from the parties' Local Rule 56.1 statements, responses, and attached exhibits.

under a contract with the City of Chicago to clean the domestic terminals from at least October 2010 until December 14, 2012, when the contract ended. Scrub has nearly one thousand employees who work in various capacities, but mostly at O'Hare.

Scrub employees working at O'Hare clock in and out at the start and end of their shifts. Once employees report their hours for the day (or week, depending on the supervisor's practices), supervisors fill out Supervisor Payroll Input Sheets ("input sheets") to record the time each employee worked. Sally Coady, Scrub's Payroll Specialist, uses these input sheets, not the time cards, to calculate Scrub's employee payroll. Plaintiffs claim that their compensation, as determined by the input sheets, violates the FLSA in two ways. First, plaintiffs claim that they punched in and performed work prior to the start of their shifts, but were not paid for that time, and that they continued to work after punching out, but were not paid for that time. Second, plaintiffs allege that thirty minutes were automatically deducted from their paid time for a lunch break on each shift, but they often worked during that break and were not compensated.

Neither Kaminska nor Rathke directly supervised either plaintiff. As Vice President of Operations, Kaminska supervises the manager for each department of operations, which is approximately ten people. These ten "top supervisors" oversee even more supervisors who oversee the janitors on each shift. Additionally, the janitors on each shift, and in each department, answer to a "lead" who acts as a supervisor for each individual crew, but also works as a janitor alongside the crew. Kaminska is responsible for promoting janitors and, through supervisors, approving any overtime worked. Kaminska does not, however, report time worked by janitors on the input sheets. The supervisor for each shift fills out the input sheets, which are forwarded to Coady, along with the corresponding time cards. According to Kaminska, she does not review the input sheets before they are sent to Coady or alter the time recorded on them, and

2

only the janitors' supervisors are authorized to change the time recorded on the input sheets.[2] The janitors' schedules are set by their supervisors, not Kaminska. Kaminska signed paychecks during the relevant period, but she did so electronically and claims to have never looked at the checks, which Scrub received from their payroll company in envelopes. Kaminska claims that the supervisors oversee payroll because they, not her, observe the janitors on a daily basis. Kaminska also claims that supervisors devise their own "customized" payroll practices, which they discuss with Rathke, not her.

Kaminska acknowledged that some employees arrived at work, and clocked in, earlier than the start of their shift. She testified, however, that they did not do any work prior to the beginning of their shift because, according to her, there was nothing for them to do. She testified that in her thirty years of experience at Scrub she had never seen a janitor being asked to begin work early. This is why, Kaminska explains, she trained supervisors to record a janitor's scheduled hours as hours worked on the input sheet, provided they did not arrive to work late and did not leave early. Kaminska also testified that the only way she would know whether a janitor started working before his or her scheduled time would be if the customer, in this case the City of Chicago, called requesting that the janitor do so. According to Kaminska, that never happened. Kaminska also testified that she never instructed any supervisor to direct any janitor to work during their thirty-minute lunch break.

As Scrub's General Manager, Rathke, through other upper-level employees, oversees all financial aspects of the company, sales, contracts, and quality assurance. Rathke was the "point

---

[2] Plaintiffs dispute this because Coady testified that when an employee complained about not being paid for hours worked Coady would fax that employee's time card to their supervisor, who would then get authorization from Kaminska to approve the hours worked. The court fails to see how this is inconsistent with Kaminska's claim that only supervisors were authorized to change the time recorded on the input sheets.

person" for all aspects of the City of Chicago contract, but Kaminska was involved with operational aspects of the contract. According to Rathke, Scrub's Human Resource ("HR") Specialist reports directly to him. Kaminska also brings HR issues to Rathke and when supervisors have issues with their subordinates, they generally go to him to resolve those issues. Rathke does not review payroll or janitors' time cards.

According to Rathke, the leads trained new janitors and either Kaminska or a supervisor trained the leads. He further testified that the leads decided when the janitors worked, and ensured that they did not violate any work rules. If such violations occurred, the leads reported them to the supervisors. Rathke does not hire janitors, nor is he involved in disciplining them unless the disciplinary action is raised to a suspension or termination. Rathke also testified that employees are not required to come to work prior to the start of their shift, and that those who do arrive early do not perform work until the start of their shift. Rathke admitted that Scrub's policy is to pay employees from the start of their shift, even if they clock in early, and explained that this is so because they are not required to do anything work-related prior to the beginning of the shift, but are allowed to clock in early to avoid waiting in line at the beginning of the shift. According to Rathke, if employees chose to do work prior to the start of the shift, he would not be aware of it.[3] Rathke also claimed that janitors were given thirty minutes for their lunch breaks, plus time to walk to and from their workstations.

Plaintiffs paint a vastly different picture. According to plaintiffs, they were told that they had to arrive prior to the start of their shifts so they would have time to collect supplies and do mandatory stretching exercises before the shift started.[4] They also claim that they were told to

---

[3] Rathke actually testified that "we wouldn't be aware of it," but did not qualify who he meant by "we" and was not asked by counsel to do so.
[4] Kaminska and Rathke do not deny that plaintiffs performed these duties, but claim that they did so only after the start of the shift.

4

clock out before they returned their supplies, and were told to return to work prior to the end of their lunch break approximately once per week. They do not, however, claim that either Kaminska or Rathke directed them to do any of these things. Instead, they claim that their supervisors directed them to do so and, at times, told them that the directions came from Kaminska.

## DISCUSSION

**I.      Legal Standard**

Summary judgment is appropriate when the moving papers and affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the evidence as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt about the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient, there must be some evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**II.	Analysis**

Under the FLSA, "employees are entitled to overtime pay (i.e., one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." Shaefer-LaRose v. Eli Lilly & Co., 679 F.3d 560, 572 (7th Cir. 2012) (citing 29 U.S.C. §§ 207, 213). "To state a claim under the FLSA, [plaintiffs] must show that [their employer] had actual or constructive knowledge of [their] overtime work." Kellar v. Summit Seating, Inc., 664 F.3d 169 (7th Cir. 2011) (citation omitted). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition is construed broadly to affect congressional intent to protect the nation's workers. Donavan v. Grim Hotel Co., 747 F.2d 966, 971 (5th Cir. 1984); see also Mitchell v. Lublin, McGaughy & Assoc., 358 U.S. 207 (1959). An employer can be a company or an individual and an employee can have more than one employer at a time. See 29 U.S.C. § 203(a); Falk v. Brennan, 414 U.S. 190, 195 (1973).

Although the FLSA's definition of employer is broad, it is not limitless. Schneider v. Cornerstone Pints, Inc., 148 F. Supp. 3d 690, 696 (N.D. Ill. 2015). "Perhaps owing to the liability that comes with the status, courts have stopped short of applying the definition precisely as written – at least when the defendant in question is an individual." Id. If they did not, "every person with supervisory power over other employees would become liable for a company-employer's FLSA violations." Id. (citing Donovan v. Agnew, 712 F. 2d 1509, 1510 (1st Cir. 1983)). No court has applied such a broad standard. Id.

The Seventh Circuit has not established a standard or legal test applicable to determining whether an individual employee is an employer under the FLSA. Id. It has, however, provided some guidance. First, the Seventh Circuit has acknowledged that an individual employee can be an employer under the FLSA, "provided the [employee] had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violations." Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987). Second, the Seventh Circuit has declined to limit the analysis to a four-factor "economic reality test" utilized by some of its sister circuits. Under that test courts ask "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Orozco v. Plackis, 757 F.3d 445, 448 (5th Cir. 2014). The Seventh Circuit has found that, "[a]lthough these factors are certainly relevant in deciding whether an employer-employee relationship exists, it would be foolhardy to suggest that these are the *only* relevant factors, or even the most important." Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr., 536 F.3d 640, 644 (7th Cir. 2008) (emphasis provided).[5]

Accordingly, this court's efforts to determine the "economic reality" of the parties' employment relationship will not be restricted to the above factors and will, instead, consider "the totality of the circumstances." Schneider, 148 F. Supp. 3d at 696. Following Schneider's thorough review of the legal landscape surrounding this inquiry, the court will consider all practical and relevant facts, including whether a particular employee did more than simply supervise other employees, i.e., whether he or she exercised his or her authority to cause the

---

[5] Moldenhauer analyzed employer status under the Family Medical Leave Act, but utilized the FLSA standard because the regulations mirror each other in this regard. Moldenhauer, 536 F.3d at 644.

alleged violation in any way. See id. at 698 ("In sum, the test is to look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee in a manner that caused the FLSA violation (at least in part)."). Based on the facts presented to this court, neither Kaminska nor Rathke is an employer under the FLSA.

Starting with Rathke, plaintiffs have not presented even a mere scintilla of evidence that he was aware of, much less caused, the alleged FLSA violations. Specifically, plaintiffs provided no evidence that Rathke: (1) hired the janitors (he admitted that he had the power to fire them); (2) supervised or controlled their work schedules; (3) had anything to do with their rate or method of payment;[6] or (4) personally maintained any of their employment records. Indeed, neither plaintiff even mentions Rathke in her deposition, or indicates that he supervised any of the janitors in any way at any time. According to plaintiffs, Rathke is responsible for the alleged FLSA violations because, as General Manager of Scrub, he "controlled all aspects of employment that dealt with the FLSA violations." This claim is simply not supported by the record.

As discussed above, Rathke managed several aspects of the company through other upper-level employees. Rathke managed some HR issues, again through his subordinates. Rathke had no role in reviewing payroll or janitors' time cards. He also had no role in training either the janitors themselves or their leads and supervisors. Rathke does not work with or supervise the janitors. According to Rathke's deposition testimony, he is unaware of any janitor working prior to their start time, later than their end time, or during their lunch break. Plaintiffs

---

[6] Plaintiffs assert, without citing any supporting evidence, that Rathke set employees' hourly wages. Throughout this litigation the court has read the entirety of Rathke's deposition, and all others, several times and knows of no support for this claim.

8

offer no evidence to rebut this claim. Instead, plaintiffs attempt to cast doubt on the evidence presented by outlining Rathke's many duties at Scrub. In the end, they undermine their position because, although Rathke does indeed wear many hats at Scrub, none of them relate to the violations alleged in this case. Because Rathke did not "exercise[] control and authority over [plaintiffs] in a manner that caused the FLSA violation" he is not their employer for the purposes of this lawsuit. Schneider, 148 F. Supp. 3d at 698.

Kaminska is a closer call. Here, as with Rathke, plaintiffs provide little evidence to fulfill the enumerated factors of the economic realities test, but it is not dispositive.[7] Id. As discussed above, Kaminska supervises the "top supervisors" who oversee the janitor leads and supervisors on each shift. Kaminska promotes janitors to lead or supervisor and, through supervisors, approves any overtime worked. Kaminska does not report time worked by janitors or review the input sheets. She does not set the janitors' schedules. Although she did sign paychecks during the relevant period, she did so electronically and claims (without contradiction) to have never looked at the checks. Kaminska trained supervisors to record a janitor's scheduled hours as hours worked on the input sheets, provided they did not arrive to work late and did not leave early, because, according to her, Scrub did not ask them to do any work before or after their scheduled shift, or during their lunch break.

The best evidence plaintiffs offer in their attempt to hold Kaminska personally accountable for the alleged violations is that she "supervised the supervisors," which could lead a reasonable jury to infer that Kaminska is at least partially responsible for the alleged FLSA violations. This would be possible only if plaintiffs offered any evidence to suggest that

---

[7] Plaintiffs assert that Kaminska "dealt directly with the supervision and control of employees' work schedules and conditions of employment and maintained employment work records as part of her regular duties." As with Rathke, plaintiffs cite no evidence in the record to support this assertion, and the court knows of none.

9

Kaminska instructed the supervisors she oversaw to act in a way that facilitated the violations. They do not. The closest plaintiffs get is Rodriguez Diaz's claim that unnamed janitor supervisors and leads told her that she had to arrive to work, and start working, prior to her start time, and that the order came from Kaminska. Importantly, neither plaintiff claims to have ever spoken with, or received any direction whatsoever from, Kaminska. In fact, Solsol affirmatively denied any such communications, and Rodriguez Diaz's claim is, of course, hearsay, which the court cannot accept as true. See Federal Rule of Evidence 801. Moreover, plaintiffs have failed to offer testimony from any supervisor to confirm their claim that the alleged violations were the result of Kaminska's direction. Accordingly, they provide no evidence to show that Kaminska is even partially responsible for the alleged violations.

According to plaintiffs, the most obvious evidence that Rathke and Kaminska actually exercised authority over plaintiffs is that the alleged violations happened under their watch. Although Rathke and Kaminska were indisputably in their respective roles during the time the alleged violations occurred, it is not at all obvious to the court, based on the evidence plaintiffs presented, that they "actually exercised" any authority over the plaintiffs. Although they certainly hold high positions at Scrub, which might suggest that they were capable of exercising such authority, that alone is insufficient to establish employer liability under the FLSA. See Cardenas v. Grozdic, 67 F. Supp. 3d 917, 923 (N.D. Ill. 2014) ("'Unexercised authority is insufficient to establish liability as an employer.'") (quoting Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1161 (11th Cir. 2008)). Plaintiffs offer no evidence that either Kaminska or Rathke was present for even one of the alleged violations, or had any reason to know that they had occurred. Plaintiffs blame the janitors and leads for the alleged violations, and claim (Rodriguez Diaz, at least) that some of these supervisors blamed Kaminska. This,

10

without more, is insufficient to find that either Kaminska or Rathke is plaintiffs' employer under the economic realities test.[8]  Simply put, neither of them "exercised control and authority over [plaintiffs] in a manner that caused the [alleged] FLSA violation[s] ([even] in part)."  Schneider, 148 F. Supp. 3d at 698.

## CONCLUSION

For the foregoing reasons, the court grants Kaminska and Rathke's motion for partial summary judgment (doc. 580).  This matter is set for a status report on September 13, 2018, at 9:00 a.m.

**ENTER:**     August 28, 2018

_____
**Robert W. Gettleman**
**United States District Judge**

---

[8] The court notes that plaintiffs make much of the fact that Kaminska owned some unspecified amount of Scrub stock, and served as Scrub's President, at some unspecified time during her 30-year tenure.  They offer no evidence that she did so during the alleged violations.  Additionally, "[T]he mere facts of stock ownership or officer status in an entity that employed the complaining employee [are not] enough to deem an individual an employer."  Cardenas, 67 F. Supp. 3d at 923 (internal citation omitted).

11